IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN A. GLABECKI, | ) | CASE NO. 1:15 CV 2181 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| GORMAN-LAVELLE CORPORATION, | ) | |
| *et al.*, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |

## Introduction

Before me[1] is an action by Steven A. Glabecki against Gorman-Lavelle Corporation, *et al.,* alleging violations of the federal Fair Labor Standards Act, and its Ohio counterpart, as well as alleging age discrimination under both federal and state law, and other related charges.[2] At issue here is a sealed motion by all defendants (herein after GL) for summary judgment.[3] Glabecki, also under seal, opposes that motion,[4] and GL has replied to that

---

[1] The parties have consented to my exercise of jurisdiction, and in that regard the matter was transferred to me for further proceedings by United States District Judge James S. Gwin. ECF # 18.

[2] ECF # 1 (complaint); ECF # 27 (1st amended complaint).

[3] ECF # 72.

[4] ECF # 81.

opposition.[5] An oral argument was conducted on the motion,[6] and subsequently each party filed supplemental briefs.[7]

For the reasons that follow, GL's motion will be granted in part and denied in part as is more fully set forth below.

## Facts

Despite a very extensive record and multiple claims of facts in dispute, the facts relevant to adjudicating the present motion are neither numerous nor contested. At issue are essentially two core questions:

(1) Did the employment agreement create an obligation for Glabecki to function as an on-duty night watchman/ security guard for up to 14 hours a day during the week and 24 hours a day on weekends, thus creating a concurrent obligation by GL to pay him accordingly; and

(2) Was Glabecki's termination from employment the result of age discrimination.

### *1. The employment agreement*

The parties agree that the relevant employment agreement is in the record.[8] That agreement, signed on October 21, 2008, states, *inter alia*, that Glabecki is required to live at a residence on the premises of GL's business "so as to be reasonably available to perform

---

[5] ECF # 84.

[6] ECF # 94 (minutes); ECF # 96 (transcript).

[7] ECF ## 99, 100 (GL supplemental brief and exhibit); ECF # 101 (Glabecki supplemental brief).

[8] See, ECF # 72, Ex. 12.

Watchman Services" as that term is defined in the agreement.[9] But, in that regard, the agreement also specifies that nothing in the requirement that Glabecki reside on the premises "shall require [Glabecki] to be present in or at the Residential Premises at any designated time or times; and when [Glabecki] is present in the Residential Premises [Glabecki] and [GL] agree that [Glabecki] is not working for [GL]."[10]

It is also stated in the text of the agreement that Glabecki's cleaning duties, which are also required in addition to watchman duties, shall not "exceed fifteen (15) hours per week and the same is part-time work."[11]

Glabecki's use of the premises is specified in the agreement as his "sole compensation" for his employment and the performance of both the watchman and cleaning services.[12]

It is also relevant to note that the agreement makes particular provision for Glabecki being away from the premises, such as for vacations, overnight absences and "unusual requests," setting out preferred notice requirements in each case.[13] That same section of the agreement obligates Glabecki to be "available by phone at all times," and to provide

---

[9] *Id*. at ¶ (e).

[10] *Id*. at ¶ 14.

[11] *Id*.

[12] *Id*. at ¶ 3.

[13] *Id*. at ¶ 16.

"immediate notification to [GL] of any security, unusual, or potentially dangerous situations."[14]

Notwithstanding this language, Glabecki testified in his deposition that in June 2009, GL began paying him for 15 hours per week of cleaning services, but states that he has never received any wages for watchman services.[15] He further claims that he spent 14 hours per day on weekdays, and 24 hours per day on weekends, providing watchman services.[16] Glabecki asserts that he was not paid for these 118 hours per week of watchman services, but concedes that he did not report such services to GL for payment because he was provided "no mechanism" for doing so.[17]

## 2. *Termination*

Glabecki was terminated on August 24, 2015.[18] He maintains that prior to the termination GL took no disciplinary action against him during the preceding nine months, but asserts that one month before the termination defendant Mike Gallagher referred to him as an "old man."[19] Glabecki further contends that he was "replaced" by a young couple in

---

[14] *Id*.

[15] ECF # 81 (Glabecki's brief) at 4 (citing record).

[16] *Id*. at 4-5 (citing record).

[17] *Id*. at 5 (citing record).

[18] *Id*. at 6 (citing record).

[19] *Id*. at 6 (citing record).

their 20s who responded to a craigslist.com advertisement seeking "someone trying to get back on their feet or a younger person trying to get a good start in life."[20]

GL does not dispute that they utilized the advertisement, but notes that the language of the ad in this case was "virtually identical" to the ad to which Glabecki, then age 56, responded at the time he was hired.[21] They also point out that the individual hired after Glabecki did not "replace" him in that the person hired in August 2015 was retained purely to perform cleaning services and had no watchman duties and received no part of his compensation as free housing on the premises.[22]

GL also notes that notwithstanding the purported absence of reprimands in the nine months prior to dismissal, Glabecki received numerous written reprimands over the years, and "was an ongoing source of interruption and disruption of the work of other employees."[23] They further state that the same person that hired Glabecki was the sole decision maker who fired him.[24]

---

[20] *Id.* (citing record).

[21] ECF # 72 at 24 (citing record).

[22] *Id.* at 25 (citing record).

[23] *Id.* at 26 (citing record).

[24] *Id.*

## Analysis

**A.  Standard of review - summary judgment**

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[25] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[26]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[27] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[28] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[29]

---

[25] Fed. R. Civ. P. 56(c).

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[27] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[28] *Id.* at 252.

[29] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The court should not grant summary judgment if a party who bears the burden of proof at trial does not establish an essential element of his case.[30] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[31] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[32]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[33] But if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[34]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[35] The nonmoving party may not simply rely on its pleadings, but must "produce

---

[30] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[31] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[32] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[33] *Id.* at 252.

[34] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[35] *Anderson*, 477 U.S. at 256.

evidence that results in a conflict of material fact to be solved by a jury."[36] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[37]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[38] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[39]

---

[36] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[37] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[38] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[39] *Id.* at 225-26 (citations omitted).

But the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[40]

As a general matter, the judge considering a motion for summary judgment need examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[41] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[42] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[43]

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[44]

---

[40] *Id.* at 226 (citations omitted).

[41] *Anderson*, 477 U.S. at 248.

[42] *Id.* at 249.

[43] *Id.*

[44] *Id.* at 250.

**B.     Application of standard**

*1.     The employment agreement*

Under Ohio law, the interpretation of a contract is a matter of law. Here, there is no ambiguity in the language, cited above, that clearly sets out that there was no requirement that Glabecki be present on the premises at any specific time. Moreover, the agreement clearly contemplates that Glabecki will be absent for various reasons and does not require that he obtain permission for such absences - only that he provide notice. Those clear unambiguous provisions are not compatible with the view that Glabecki was obligated by contract to be onsite on the regular schedule he asserts.

Moreover, the agreement is also direct in stating that when Glabecki is "present" on the premises, he is then "not working for [GL]."[45] Nor is this interpretation inconsistent with the contract language that obligated Glabecki to report any security issues or dangerous situations that he became aware of while on the premises, or the requirement that he reside on the premises.

Accordingly, and as a matter of law, the contract here did not obligate Glabecki to be on the premises for any specific period of time, nor did it obligate him to patrol, investigate and/or take steps necessary to secure the premises, but merely required him to report situations he happened to become aware of during the time he was present.[46]

---

[45] ECF # 72, Ex. 12 at ¶ 14.

[46] *Id*. at (g).

In addition, this interpretation, and the facts of this case, are consistent with federal case law which sets forth the applicable test for when overtime is due in "on call" situations. It is noted that in this regard the contract did require that Glabecki "be available by phone at all times."[47]

The Sixth Circuit, in construing the FLSA, has stated that time spend at home but on-call may be compensable if the restrictions attendant to the on-call status are so onerous so as to prevent the employee from effectively using his time at home for personal pursuits.[48] The question of whether the employee's time at home while on-call is spent primarily for the benefit of the employer or the employee is an inquiry that is highly fact-specific and depends on all the circumstances.[49] That said, the fact that time spent on-call may have had some effect on the employee's ability to engage in some activities is not enough to show that such time is compensable.[50] The inquiry is whether the time at issue was spent "predominately for the employer's benefit or for the employee's benefit."[51]

Here, as discussed above, the contract itself did not require Glabecki to spend any specific amount of time on the premises, nor to undertake any specific pro-active

---

[47] *Id.* at ¶ 16.

[48] *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 611 (6th Cir. 1992)(citation omited).

[49] *Abelkhaleq v. Precision Door of Akron*, 653 F. Supp.2d 773, 779 (N.D. Ohio 2009).

[50] *Id.*

[51] *Id.*

investigative or monitoring activities.[52] The contract also clearly contemplated that Glabecki would be regularly be absent from the premises on his own schedule and for his own reasons, with the contract giving GL no authority to grant or deny "permission" for any absence and merely requiring Glabecki to afford some advance notice.[53] Indeed, Glabecki has acknowledged that he was not required to be in the residence between 5 p.m. and 8 a.m., and further concedes that no one from GL monitored, supervised or restricted his activities during these hours,[54] except for the provision that no one but Glabecki and his children could reside at the premises[55] and a requirement that Glabecki obtain approval in advance for having overnight guests.[56]

As such, this situation is not similar to the situation in *Armour & Co. v. Wantock*[57] relied on by Glabecki. In *Armour*, the Supreme Court concluded that industrial firefighters who were required to be present in their firehouse after they punched out from work at 5 p.m.

---

[52] The contract "encourage[d]" Glabecki to keep a dog outside on the premises to "discourage" break-ins, with GL assuming the cost of veterinary care while Glabecki was responsible for caring for and feeding the dog. ECF # 72-12 at Ex. B ¶4.

[53] Glabecki has argued that he could not leave the property even to go out to dinner without GL's "explicit approval." ECF # 101 at 4. The contract language, however, speaks only of a requirement that GL receive notification of an "overnight absence" or a "vacation." There is absolutely no requirement of any notice simply for dinner out and no requirement in circumstance of any absence for approval from GL.

[54] See, ECF # 72 at 20 (citing record).

[55] ECF # 72-12 at ¶ 14.

[56] *Id.* at ¶ 16(d).

[57] *Armour & Co. v. Wantock*, 323 U.S. 126 (1944).

until 8 a.m. the next morning were nevertheless entitled to compensation for the overnight hours. The Court reasoned that the requirement to remain in the firehouse was equivalent to a requirement to remain in a state of readiness and that "time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer."[58]

The analytical key to understanding why *Armour* is not helpful to Glabecki is the inquiry mandated by the Sixth Circuit that focuses on whether requiring Glabecki to reside at the premises was so burdensome as to effectively preclude him from using time at home as his personal time according to his personal wishes. Plainly, as detailed above, the residency requirement here was not so burdensome as to effectively preclude him from living as he pleased during his time on the premises, including the complete freedom to be totally away from the premises whenever he wished with no restrictions save a reasonable prior notice of his planned absence and that he be available by phone.[59]

This situation closely tracks the circumstance set out in 29 C.F.R. 785.23 which provides that an employee who resides on the employer's premises on a permanent basis is not considered to be working the entire time he is on the premises. The core elements of this ruling are that the employee may engage in "normal private pursuits" while on the premises and that he has periods of complete freedom from work duties when "he may leave the

---

[58] *Id*. at 133.

[59] See, ECF # 72 at 23 (citing Glabecki's deposition testimony).

premises for purposes of his own." As detailed earlier, this description in the regulation is substantially congruous with Glabecki's. Taken together with rubric promulgated by the case authority, this regulation supports the conclusion that, as a matter of law, Glabecki was not working for compensation by virtue of being required to residence on the premises.

There is no dispute that Glabecki spent some time after-hours or on weekends actually responding to situations that prompted a call to police. While the actual number of instances is disputed, as are the questions of what kind of events caused the calls or for how long Glabecki was involved in each situation,[60] Glabecki is entitled to compensation for the time actually spent responding to situations that occurred after-hours or on weekends.[61]

The grant of summary judgment to GL does not include resolution of Glabecki's claim to compensation for this specific time spent responding to security issues concerning GL. The parties are directed to meet and confer on establishing an amount of compensable time in this respect, and then in determining the appropriate compensation attributable to that time. Such meet and confer to occur before June 8, 2018 and the results of that meeting to be communicated to the Court in a joint filing by June 15, 2018.

## 2. *Age discrimination*

As stated by the Sixth Circuit:

> Under the ADEA, it is unlawful for an employer to discharge an employee who is at least 40 years old because of the employee's

---

[60] See, ECF # 84 at 3-4.

[61] *Abdelkhaleq*, 653 F. Supp. 2d at 783-84.

age. 29 U.S.C. §§ 623(a)(1), 631; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir.2008). Similarly, it is an unlawful discriminatory practice in Ohio for an employer to discharge an employee because of the person's age. Ohio Rev.Code § 4112.02(A). Age-discrimination claims brought under Ohio law are analyzed under the same standards as claims brought under the *ADEA. Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir.2005). A plaintiff can prove unlawful age discrimination under the ADEA with circumstantial evidence—that is, "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003).

A plaintiff without direct evidence of discrimination can establish a prima facie *346 case of age discrimination by showing: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker, or there are circumstances that support an inference of discrimination. *Mickey, 516 F.3d at 521; Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir.2012); *Coomer v. Bethesda Hosp.*, Inc., 370 F.3d 499, 511 (6th Cir.2004). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir.2007) (internal quotation marks omitted).[62]

In the present matter, GL asserts that Glabecki cannot establish a prima facie case of age discrimination because he was not replaced by a younger person doing the same job.[63] The parties agree that GL hired an individual on August 24, 2015 to clean the office space

---

[62] *Moffatt v. Wal-Mart Stores, Inc.*, 624 Fed.Appx. 341, 344 (6th Cir. 2015).

[63] ECF # 72 at 25.

-15-

during the work day, but that individual was not given any "watchman" duties and was not given free rent in the on-premises residence.[64] Moreover, that individual himself was terminated after only three weeks because of repeated failure to report to work on time.[65] GL then hired a commercial cleaning company for that function, so that less than a month after Glabecki was terminated, GL had no individual on staff performing any of his previous functions.[66]

GL argues that Glabecki was not "replaced" because the individual hired after he was terminated had substantially different duties from Glabecki.[67] Specifically, GL stated that this individual was only retained to clean the office space during the day and had no "watchman" duties and received no "free rent" in the on-site residence.[68]

Courts have concluded that an individual is not "replaced" when a subsequently hired employee's duties are "materially different" from those performed by the plaintiff.[69] In the case of *Shah v. NXP Semiconductors,* the court determined that although a new, younger manager had assumed oversight over three of the plaintiff's former accounts, the new job was

---

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] ECF # 72 at 25.

[68] *Id.*

[69] See, *Shah v. NXP Semiconductors USA, Inc.*, 507 Fed. Appx. 483, 488-89 (6th Cir. 2012).

materially different and did not constitute the replacement of the plaintiff because the new position spends 40-60% of its time performing duties not performed by the prior position, has a different reporting structure, and is compensated differently.[70]

Here, there is undoubtedly overlap between the job Glabecki was doing and the job as done by his successor. That overlap is in providing cleaning service, something Glabecki himself testified that he spent less than two hours per day doing,[71] and the employment agreement directed him to spend no more than 15 hours a week at this function.[72] These duties were compensable at an hourly rate. The non-overlap is in performing watchman duties, which, as detailed above, were largely passive and was compensable by receiving rent-free accommodations.

Thus, like the situation in *Shah*, the undisputed facts show that the position as it existed for Glabecki was materially different from the job performed by his successor. Although there was some overlap in the cleaning service, the absence of the watchman function and its requirement to maintain residence at the premises constitute sufficient reasons to conclude that Glabecki was not "replaced" when an individual was hired after his termination for a materially different job.

The facts here also show that GL decided to modify or reorganize how it obtained the services previously provided by Glabecki. As such, this falls within the modification to the

---

[70] *Id.*

[71] ECF # 72 at 6-7 (citing record).

[72] *Id.*

-17-

fourth element of a prima facie case set out in *Barnes v. Gen Corp Inc.*,[73] which recognizes management's prerogative, for business reasons, to reorganize its workforce, to outsource functions or to reduce the number of employees.[74] That modification states that when the employer has claimed the termination is the result of legitimate business reason such as a reduction in force, the employee must provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.[75] Here, because Glabecki has not disputed that after his termination GL reorganized itself as to how it obtained the services formerly provided by Glabecki, he must now provide additional evidence that GL impermissibly singled him out for discharge.

In this instance, Glabecki relies heavily on the advertisement used it recruit the new hire. But, as GL notes, the ad seeks "someone trying to get back on their feet **or** a younger person trying to get a good start in life."[76] Further, GL observes that prior to Glabecki a couple in their sixties were employed to live in the residence and perform part-time cleaning services, and that Glabecki himself, together with his live-in girlfriend who initially did the cleaning, were hired when they were over fifty.[77]

---

[73] *Barnes v. Gen Corp Inc.*, 896 F. 2d 1457 (6th Cir. 1990).

[74] See, *Blankerts v. V. Gladieux Enterprises*, 197 F. Supp. 2d 956, 960-61 (N.D. Ohio 2002).

[75] *Barnes*, 896 F.2d at 1465.

[76] ECF # 84 at 12.

[77] *Id*.

These facts, even when viewed most favorably to Glabecki, do not provide additional evidence showing that he was impermissibly singled out because of his age when he was terminated. Thus, he has not shown that GL's business decision to reorganize the way it obtained these services[78] was pretextual.

### 3. *Prompt Pay Act*

The purported violation of Ohio's Prompt Pay Act alleged in Count Five of the amended complaint involves a question of state law. Inasmuch as all federal claims are resolved as set forth above, I decline to exercise jurisdiction over this claim, and it is therefore dismissed without prejudice.

### 4. *Counterclaim/retaliation*

Glabecki has also claimed that GL by retaliated against him for asserting his FLSA and Ohio minimum wage claims by filing a counterclaim against him in this matter.[79] That counterclaim was subsequently dismissed, and in granting GL's motion to dismiss their counterclaim[80] I noted that I declined to exercise supplemental jurisdiction over it.[81]

---

[78] The fact, previously noted, is that GL, within a month of Glabecki's termination, totally eliminated any employee from this situation in favor of retaining a cleaning company, while eliminating any watchman function entirely.

[79] ECF # 27 at ¶¶ 9, 10.

[80] ECF # 97.

[81] ECF # 98. *Sneed v. Wireless PCS Ohio #1, LLC*, No. 1:16 CV 1875, 2017 WL 879591 (N.D. Ohio Mar. 6, 2017)

Where no filed counterclaim exists so as to constitute an alleged act of retaliation, such a claim of retaliation in that situation cannot be supported by law.[82]

Accordingly, Glabecki's retaliation claims are dismissed with prejudice.

## Conclusion

For the reasons stated, GL's motion for summary judgment is granted in part and denied in part as set forth above. The parties are directed to resolve the single remaining issue of compensation for actual time spent by Glabecki in making police reports after working hours or on weekends pursuant to his watchman duties according to the terms set forth above.

IT IS SO ORDERED.

Dated: May 21, 2018    s/ William H. Baughman, Jr.
United States Magistrate Judge

---

[82] See, *Hutchinson v. Honeymoon Corporation*, No. 5:16 CV 18, 2017 WL 6502529, at ** 6-7 (N.D. Ohio Dec. 19, 2017). The court initially noted that there is no Sixth Circuit authority holding that the "mere filing of a non-frivolous counterclaim is retaliation." It then observed that it need not reach that decision because the defendants only threatened to file a counterclaim, but did not. "[W]ithout the filing of a counterclaim, no [adverse employment] action was taken against the plaintiff" in order to allege retaliation.